COMMERCE COTTON OIL COMPANY v. MRS. CORA CAMP.

No. 2195. Decided April 10, 1912.

**1.—Death—Negligence—Master and Servant.**

The action given by statute where death is caused by the wrongful act, negligence, unskillfulness, or default of another (Rev. Stats., 1895, art. 3017, par. 2), this being the only provision applicable to a private corporation not a carrier, is not applicable to cases where the negligence, etc., is that of a servant or agent of the defendant corporation not clothed with its corporate powers or constituting its alter ego. Fleming v. Texas Loan Agency, 87 Texas, 238; Sullivan-Sanford Lumber Co. v. Cooper, 105 Texas, 21, followed. (P. 133.)

**2.—Same—Employment of Minor—Dangerous Employment—Warning.**

A boy fifteen years of age in the employ of a cotton seed oil mill, while engaged in shoveling hulls in the company's hull house, was caught under and smothered to death by a fall of the pile of hulls. The occupation was dangerous by reason of liability to such accidents. It was not shown by whom or by what character of agent or servant of defendant he was employed or set to work, and the general manager denied doing so or knowing of his employment there; nor was it shown what or whether any warnings of the danger were given him. Held that no case of liability on the part of the company was shown, and that a peremptory charge to find for defendant was warranted. (Pp. 132-134.)

Error to the Court of Civil Appeals, Fifth District, in an appeal from Hunt County.

Mrs. Camp sued the Cotton Oil Company and had judgment, which was affirmed on appeal by defendant, who then obtained a writ of error. A former appeal in this case is reported in 117 S. W., 451.

*Harry P. Lawther* and *Looney & Clark*, for plaintiff in error.—
The statute giving a cause of action for death does not extend to acts
of agents of persons other than the proprietors, owners, charterers or
hirers of any railroad, steamboat, stage coach, or other vehicles for
the conveyance of goods and passengers; or the receivers or other
persons in charge or control of any railroad.  Rev. Stats., 95, art.
3017, sec. 2; Halbert v. Texas Tie & Lumber Co., 107 S. W., 592; Ship-
pers' Comp. & W. Co. v. Davidson, 35 Texas Civ. App., 558; Fisher
v. Telephone Co., 34 Texas Civ. App., 308; Cole v. Parker, 27 Texas
Civ. App., 563; Lipscomb v. Railroad Co., 95 Texas, 5; Hargreaves
v. Vaughan, 82 Texas, 347; Hendricks v. Walton, 69 Texas, 192;
Burns v. Merchants & Planters Oil Co., 62 S. W., 1063; Reversed,
96 Texas, 578-80.

*John A. Stone, William Pierson,* and *T. D. Starner,* for defendant
in error.—Before engaging very young persons by their contract in
hazardous employment, the employer should know that they have the
necessary capacity and experience to do the work in safety, or be
prepared to take such measures, by way of instruction, as to secure
the same end.  G. C. & S. F. Ry. Co. v. Jones, 76 Texas, 350; Hamil-
ton v. G. H. & S. A. Ry. Co., 54 Texas, 556; Railway Co. v. Redeker,
76 Texas, 190; T. & P. Ry. Co. v. Brick, 83 Texas, 526-598.

It is the duty of the master to warn and instruct a young and inex-
perienced servant as to the dangers of the employment, which are
known to the master, or would be known to him by the exercise of
reasonable care, but which the servant, because of his immature
judgment and want of experience, cannot reasonably be expected to
know.  Texarkana Ry. Co. v. Preacher, 59 S. W., 593; Ragley Lum-
ber Co. v. Goldsmith, 66 S. W., 581; Ward v. Texas Product Co., 88
S. W., 496; Norden v. Verlinden, 3 A. & E. Annotated Cases, 367,
and cases cited under note.

If the danger of the employment is patent, and the servant, by
reason of his youth and inexperience, does not know or appreciate
the danger incident to the service he is employed to do, it would be
the duty of the master to warn him of it and instruct him how to
avoid it, before exposing him to it.  Ford v. Bodcaw Lumber Co.,
73 Ark., 49.

Private corporations are liable for the death of persons caused
by their failure to exercise ordinary care in the performance of non-
assignable and non-delegable duties, even though such failure is due
to some act or omission of a servant.  Citizens Telephone Co. v.
Thomas, 45 Texas Civ. App., 20; San Antonio Gas & Elec. Co. v.
Badders, 46 Texas Civ. App., 559; Kirby Lumber Co. v. Chambers,
81 Texas Civ. App., 632; Cole v. Parker, 27 Texas Civ. App., 563;
Jacksonville Ice & Elec. Co. v. Moses, 134 S. W., 379.

The duty of the master to warn an inexperienced employee, espe-
cially a minor, is a nonassignable and nondelegable duty.  Texas &
Pacific Ry. Co. v. Brick, 83 Texas, 598; Texarkana & Fort Scott Ry.
Co. v. Preacher, 59 S. W., 593; Waxahachie Cotton Oil Co. v. McLain,
27 Texas Civ. App., 334; White v. S. A. Water Co., 9 Texas Civ.
App., 465; Producers' Oil Co. v. Barnes, 103 Texas, 515; M. K. & T.

Ry. Co. of Texas v. Smith, 45 Texas Civ. App., 128; Greenville Cotton Oil Co. v. Harkey, 48 S. W., 1005; Labatt, Master and Servant, sec. 578.

In this State it is well settled that a servant who is authorized to employ and discharge another is, as to such other, the vice-principal and the alter ego. Hugo, Schmeltzer & Co. v. Paiz, 104 Texas, 563; Missouri Pacific Ry. Co. v. Miller, 75 Texas, 4; G. C. & S. F. Ry. Co. v. Wells, 16 S. W., 1025; Sweeny v. G. C. & S. F. Ry., 84 Texas, 433.

MR. CHIEF JUSTICE BROWN delivered the opinion of the court.

Mrs. Cora Camp instituted suit in the District Court of Hunt County against the Commerce Cotton Oil Company, a corporation, seeking to recover damages for the death of her minor son, caused by the negligence of the Oil Company. She recovered a judgment which was affirmed by the Court of Civil Appeals for the Fifth District. We copy the conclusions of fact found by the Court of Civil Appeals:

"Oscar Camp, while employed by appellant to shovel hulls in its hull house, met his death by being smothered in the hulls on the morning of December 15, 1906. He was last seen alive between three and four o'clock Saturday morning in appellant's engine room, where he had gone to get a drink of water. The hull house is 100 feet long and 60 feet wide and has two rows of posts its entire length, the posts being 20 feet apart; on top of each row is a girder running from one end of the building to the other, dividing the house into three sections. The hulls are conveyed from the mill to the hull house by a conveyor running the entire length of the building, and every 20 feet there is a chute or spout through which the hulls are discharged. The girders are about six feet from the roof and these chutes are a little above the level of the girders. The roof is 26 feet high at its highest point and slopes down to the eaves, which are sixteen feet high. The hull house, speaking generally, stood north and south and had large double doors at its front or south end, near the oil mill, through which people backed in their wagons in hauling away hulls. The first chute was 20 feet from the doors and the hulls had worked out until they came outside ten feet on an incline. The house was practically full of hulls at the time of the death of Oscar Camp. During the day people would haul away hulls, but during the night the house would again be filled. The work of shoveling hulls was dangerous. If a person in shoveling hulls got out of the beaten path he would sink; and again, if the banks were perpendicular or nearly so, the hulls were liable to slough off in large piles or chunks. Oscar Camp was not warned of, and did not know or appreciate the danger at the time of his employment, or at the time of his death. The appellee is the only living parent of Oscar Camp, his father having died prior to his employment by appellant, and while appellee knew that her son, Oscar, was in the appellant's employ, she did not know the character of his employment, or that he was employed in a dangerous occupation or employed to shovel hulls. The appellant was negligent in employing Oscar Camp, a minor fifteen years of age,

and putting him at work at a dangerous employment, without warning him of the danger, and his death was the proximate result of such negligence. Neither Oscar Camp nor appellee were guilty of contributory negligence. The hull house was lighted by two incandescent lights, which went out as soon as the machinery stopped running.

"On the night of the death of Oscar Camp the spout nearest the front of the building was being used. He was found in the forenoon of Sunday buried in the hulls between the first chute and the front of the building. The evidence was sufficient to justify a finding, and we find, that he was buried by a quantity of hulls breaking or sloughing off, by which he was submerged and suffocated."

From the above conclusions of fact, and indeed the entire record, it is manifest that the trial court and the Court of Civil Appeals ignored the distinction between an action to recover damages for death caused by the negligence of a private corporation, and an action for damages from injuries to the person, in which case the rules of the common law would be applicable. But the corporation can be held liable only under the following article of the Revised Statutes:

"Art. 3017.   An action for actual damages on account of injuries causing the death of any person may be brought in the following cases:

"2.   When the death of any person is caused by the wrongful act, negligence, unskillfulness or default of another."

It is held in this State that the word, "another," in the statute, means another person, and includes private corporations; that is to say, a private corporation being "another person" in law, is liable to the same extent as a natural person would be under the same facts. Fleming v. Texas Loan Co., 87 Texas, 238, 26 L. R. A., 250; Sullivan-Sanford Lumber Co. v. Cooper, 105 Texas, 142 S. W., 1168.

In the last case cited this court held that a private corporation would be bound by the acts and the negligence of the man whom it clothed with its corporate powers, and, in accord with that case, we hold that the Oil Company will be liable in this case for the acts and negligence of Day, its *alter ego*. Whatever acts of Day done for the corporation that would render him liable if done for himself, will bind the company as it would bind Day, but no further.

When the evidence was closed the defendant's counsel requested the court to instruct the jury to return a verdict for the defendant, which request was refused, and that action of the court is assigned as error in this court.

The plaintiff charged, in substance, that the Cotton Oil Company, without her knowledge or consent, employed her minor son Oscar Camp and set him to work at a dangerous and hazardous employment, and, knowing that Oscar did not understand the risk, failed to warn him of the danger, in consequence of which Oscar was killed by the falling of the cotton seed hulls upon him. The allegations were full, but it is unnecessary to state them more fully here.

To recover, the plaintiff was required to prove that Oscar was employed by G. W. Day, the general manager, and the only person for whose negligence the corporation would be liable. Also she must

have proved that Day negligently set Oscar to work at a dangerous employment without informing the boy of the danger.

There is not in the statement of facts any evidence that Day employed Oscar. Day testified that he did not employ the boy and did not know that he was at work in the mill until he heard of his death, and the plaintiff swore that she did not believe that Mr. Day knew that Oscar was at work in the oil mill. There is no evidence to the contrary. Of course, if Day did not employ Oscar and did not know he was at work, he could not have negligently set him to work at a dangerous employment. Day testified that his superintendent hired hands, but it is not proved that the superintendent hired Oscar. Perhaps Crowson was the superintendent; but he stated that he did not remember hiring the boy; in fact, there was no proof as to who hired him or whether or not he was warned. We are not to be understood as holding that the superintendent's act, if he did employ the boy, would bind the corporation for his negligence, if negligent. He was only an agent appointed by Day and his negligence, if it had been proved, would not authorize a verdict against the corporation.

We have discussed these questions thoroughly in Sullivan-Sanford Lumber Co. v. Cooper, ante, p. 21, 142 S. W., 1168, to which we refer.

In Hargrave v. Vaughn & Cumming, 82 Texas, 347, the prescription clerk of apothecaries negligently substituted poison for the medicine named in a prescription for a child, which caused the child's death, and the father sued the druggists for damages. Judge Stayton said: "It is evident, under the averments of the petition, that Vaughn and Cumming were not responsible for any injury to plaintiffs resulting from the death of the child, for it is clear that the statutes on which such actions are based would not render them liable to such an action for the negligence of their agent, though the agent may be liable. Hendricks v. Walton, 69 Texas, 192."

There is no authority in this State nor elsewhere, so far as the writer knows, to the contrary.

The right of Mrs. Camp to recover depends wholly upon the statute which in terms confines the liability to the acts of the person sought to be charged and the decisions exclude negligence of the agents.

To the complaint that it is a harsh law, we answer that it was enacted by the Legislature and this court has no authority to change it. "Hard cases make bad law."

We cannot see that it is possible for Mrs. Camp to make the proof necessary to authorize a recovery, and it would be useless to remand this case for another trial.

Because the trial court erred in not directing the jury to return a verdict for the defendant, the judgment of the District Court and that of the Court of Civil Appeals is reversed and judgment is here rendered for the plaintiff in error.

*Reversed and rendered.*

Associate Justice Phillips did not participate in the decision of this case.