Allen J. SCOTT, Petitioner,

v.

The ATCHISON, TOPEKA AND SANTA
FE RAILWAY COMPANY,
Respondent.

No. B–6648.

Supreme Court of Texas.

Jan. 4, 1978.

Rehearing Denied June 7, 1978.

Helm, Pletcher, Hogan & Burrow, J. Donald Bowen, Houston, H. A. Coe, Jr., Kountze, for petitioner.

O'Brien & Richards, Chilton O'Brien, Beaumont, McLeod, Alexander, Powell & Apffel, Inc., Galveston, for respondent.

DANIEL, Justice.

This appeal involves the adequacy of issues and instructions submitted to the jury in a personal injury suit brought under the Federal Employers' Liability Act, 45 U.S. C.A., § 51 et seq. Plaintiff, Allen J. Scott, alleged that his injuries were caused by negligent acts of his employer, The Atchison, Topeka and Santa Fe Railway Company, while he was in the course and scope of his employment as a brakeman. Scott's injuries occurred when a freight train derailed at a portion of the roadbed which was washed out by a heavy rainstorm. Based upon an answer favorable to the plaintiff on one broadly submitted negligence issue, the trial court rendered judgment for the plaintiff. The Court of Civil Appeals reversed and remanded on various grounds relating to the trial court's submission of the case to jury. 551 S.W.2d 740. We affirm the judgment of the Court of Civil Appeals.

The evidence shows that during the late afternoon and early evening of June 5, 1973, an unprecedented rainstorm struck north of the railroad company's track between Somerville and Silsbee in the vicinity of Plantersville. It resulted in the flooding of Caney Creek near the location of the railroad's Bridge 46.3. Portions of the roadbed and ballast beneath the tracks near Bridge 46.3 were washed out. The washout was unknown to plaintiff or other employees on the defendant's freight train when it left Somerville at about 6 p. m. or at anytime before the train ran into the washed out area about 9 p. m. The accident caused plaintiff to sustain injuries to his back, neck, and left knee.

Plaintiff Scott originally alleged, in very general terms, that his injuries were caused, in whole or in part, by the negligence of defendant "in failing to provide plaintiff with a reasonably safe place in which to do his work." The railroad filed exceptions to the generality of such allegations, and thereafter Scott filed an amended petition in which he added three specific allegations as follows:

"The track and supporting bed and ties were faulty in construction, materials and or maintenance since they allowed this train to derail on the occasion in question. Defendant also violated Article 6328 of Vernon's Civil Statutes Annotated and such violation was negligence and was a cause, in whole or in part, of the accident and injuries to Plaintiff. In addition, Defendant violated the provisions of the Boiler Inspection Act [*45 U.S.C.A. § 23*] in that the engine Plaintiff was riding in was not safe, all of which was a cause in whole or in part of his injuries."[1]

The railroad company filed a general denial and an affirmative written pleading in which it alleged that the accident and Scott's injuries were caused solely by an "Act of God" in the form of an unprecedented rainfall which caused water to flood Caney Creek and wash out the roadbed and tracks at the place of the derailment.

There was more than a scintilla of evidence in support of the specific allegations of both parties, except as to plaintiff's allegation that the track and supporting bed

---

1. Article 6328, referred to in the allegations, provides:

"In no case shall any railroad company construct a roadbed without first constructing the necessary culverts or sluices as a natural lay of the land requires, for the necessary draining thereof."

All statutory references herein refer to Vernon's Annotated Texas Civil Statutes unless otherwise noted. Citations to Rules refer to the Texas Rules of Civil Procedure.

and ties were faulty in construction, materials and/or maintenance. We find no evidence in support of the latter allegation.

Upon the request of the plaintiff and over the objections of the defendant, the case was submitted to the jury on one broad negligence issue followed by a conditional causation issue, and one specific issue on the alleged unsafe condition of the door latch on the locomotive, followed by related conditional issues.[2] The trial court refused to submit the railroad's request for a special issue on sole causation by an "Act of God" or to correct its explanatory instructions on that aspect of the case when they were objected to by the railroad.

■ The Court of Civil Appeals, with one member dissenting, reversed and remanded upon a holding that the railroad's defensive issue on "Act of God" should have been submitted and that Special Issue No. 1 was too broad in that it did not limit the jury's consideration to those acts or omissions which were raised by the written pleadings and the evidence. Rule 277. Although federal law governs substantive rights of the parties in F.E.L.A. cases, such cases filed in our state courts are tried in accordance with our own applicable Rules of Civil Procedure. *Missouri Pacific Railroad Company v. Cross,* 501 S.W.2d 868, 870 (Tex.1973).

### The Negligence Issue

■ Plaintiff Scott insists that the Court of Civil Appeals erred in sustaining defendant's objection to the manner in which Special Issue No. 1 was submitted. He argues that the holding is in conflict with *Members Mutual Insurance Co. v. Muckelroy,* 523 S.W.2d 77 (Tex.Civ.App.1975, writ ref'd n. r. e.), in which the court approved a broad form of submission of several specifically alleged acts of negligence of the parties as follows: "Whose negligence, if any, do you find from a preponderance of the evidence

proximately caused the collision made the basis of this suit?" The answer space followed with (a) designating the name of the defendant, (b) the name of the plaintiff, and (c) "Both," with blank spaces for the jury to indicate its findings. 523 S.W.2d at 79. However, the cases are distinguishable in that the *Muckelroy* case apparently had some evidence in support of all of the alleged acts of negligence. The same was true in *Mobil Chemical Company v. Bell,* 517 S.W.2d 245, 255 (Tex.1974), relied upon in *Muckelroy,* in which we explained the broad submission permitted by Rule 277 as applying in ordinary negligence cases "where several specific acts of negligence are alleged and evidence as to each is introduced . . . ." This is not true in the present case. Furthermore, the defendant's complaint in *Muckelroy* was that the broad issue failed to limit the jury to the specific acts of negligence *alleged,* without any complaint that it failed to limit the jury to facts which were alleged *and proved.* In the present case, the railroad's objection complains that the broad submission of Special Issue No. 1:

". . . permits the Jury to . . hold the Defendant liable upon some basis neither pled nor proved by Plaintiff . . . . Such Issue should be limited to the acts or omissions pled by Plaintiff to constitute negligence and concerning which there is some proof to support the submission of an issue."

This is the first time that such two-fold objection to a broad and unlimited submission of negligence has been clearly presented to this Court since the 1973 amendment to Rule 277. This case is different from *Mobil Chemical, supra,* in two respects. First, as heretofore indicated, all alleged specific acts of negligence were not supported by evidence. Secondly, there are facts in evidence in the present case from

---

2. Special Issue No. 1 read: "Do you find from a preponderance of the evidence that on the occasion in question the railroad was negligent?" Special Issue No. 2 inquired if "such negligence was a cause in whole or in part of the injuries suffered by Mr. Scott." Both were answered "We do" with a notation at the side of the

answers "10 for." Special Issue No. 3 read: "Do you find from a preponderance of the evidence that the door latch on the locomotive in question was not in proper and safe condition on the occasion in question?" To this the answer was "We do not." The verdict was signed by the ten jurors.

which negligence might have been inferred by the jury although not pleaded. For instance, incident to other proof, there was evidence that a storm warning for the area in question had been broadcast on television at about 5 p. m., an hour before the train left Somerville, and nearly four hours before the train reached the point of derailment; the railroad has a storm warning system but did not relay any warning of the rainstorm which had occurred in the area prior to the train reaching the washout; no inspection of the tracks was made during the period of an hour after the storm and before the train reached the washout. The jury could have inferred from other evidence and circumstances that the train was being operated at an excessive rate of speed or that the brakes were not applied soon enough to avoid the derailment.

Special Issue No. 1 simply allowed the jurors to make their own determination as to whether "on the occasion in question the railroad was negligent," without regard to whether the acts or omissions upon which they reached a 10 to 2 answer had been raised by the pleadings and proof. This is contrary to the requirement in Rules 277 and 279 that special verdict submissions shall be only upon controlling issues that are raised "by the written pleadings and the evidence." This requirement was unaffected by the 1973 amendment to Rule 277. The pleadings of the parties still furnish the blueprint for the charge.[3] In the absence of trial by consent, a judgment not supported by the pleadings is erroneous. *City of Fort Worth v. Gause*, 129 Tex. 25, 101 S.W.2d 221 (1937).

■ Under Rule 277, the trial court has the discretion to submit an issue broadly, including the combination in one issue of several acts or omissions which may be alleged to constitute negligence. However, when one or more pleaded acts or omissions are unsupported by evidence and the record contains evidence of other possible negli-

gent acts or omissions which were not pleaded, failure to limit the broad ultimate fact issue to acts or omissions which were raised by both pleadings and proof violates Rule 277 and is error. In view of the wide variance between the pleadings and unpled facts and circumstances from which the jury could have inferred that the railroad was negligent, such error was reasonably calculated to and probably did cause the rendition of an improper judgment. Rule 434. Accordingly, the Court of Civil Appeals properly reversed and remanded the case for a new trial.

■ It has been suggested that the absence of the necessary limiting language in Special Issue No. 1 can be cured on retrial by an accompanying instruction along the following lines:

In determining negligence you may consider only those acts or omissions which are both alleged in the pleadings and supported by the evidence.

Under the facts and circumstances of this case, we do not agree that the above language would be an acceptable means of bringing the broad single issue submission of negligence into compliance with those portions of Rules 277 and 279 which require the trial court to confine the issues to those "raised by the written pleadings and the evidence." The suggested remedy involves questions of law which are within the trial court's area of responsibility. Whether the occurrence of acts or omissions are properly alleged in written pleadings and supported by evidence are questions of law. They have no place in the jury room.

■ Where multiple acts or omissions are alleged to be negligent, some of which are supported by evidence and some of which are not, or where there is evidence of possible negligent acts or omissions which are not alleged to be negligent, the trial court should inquire only about those which are raised by both the pleadings and the evidence. Judicial compliance with this re-

---

**3.** Hodges, *Special Issue Submission in Texas*, 4–5 (1959). Professor Hodges writes: "The facts to be inquired about in the charge must have been alleged in the pleading. There must

also be evidence of the alleged facts to support each of the issues submitted." See also Note, *Civil Procedure—Texas Special Issue Practice*, 52 Tex.L.Rev. 376, 383 (1974).

quirement does not necessarily mean the submission of separate questions with respect to each of such acts or omissions. On the contrary, compliance under the two alternative broader methods of submission authorized in Rule 277 can be accomplished very simply by listing the relevant acts or omissions (those raised by both pleadings and evidence) in a broad ultimate fact issue as authorized in paragraph two of the Rule [4] or in a checklist form detailed in paragraph four of the Rule.[5] Or, if the listing of the relevant acts or omissions in the broad ultimate fact issue should be cumbersome, complicating, or otherwise undesirable, the requirement may be met by a complementary instruction along the following lines:

> In your determination of the above question you shall consider only whether the railroad company was negligent in failing to have necessary culverts or sluices at or near Bridge 46.3, or [here listing any other acts or omissions raised by the pleadings and the evidence upon the new trial].

■ It should be stressed that Rule 277 was amended in 1973 for the specific purpose of permitting simpler and broader submissions of controlling issues as a means of halting the complex and artificial proliferation of narrow special issues, especially in ordinary negligence cases. The various alternative methods provided by Rule 277 are within the discretion of the trial court so long as the negligence and causation issues are limited in some manner to the acts or omissions which are raised by the pleadings and the evidence in cases where there is a material variance between the pleadings and the evidence.

Petitioner Scott insists that the railroad's objection to Special Issue No. 1 was not a proper method of pointing out the alleged deficiency and preserving the alleged error. This contention is grounded upon the erroneous assumption that the only viable method of curing the deficiency (failure to limit the question to acts or omissions raised by the pleadings and the evidence) was by the type of explanatory instruction contemplated in Rule 279. Upon this assumption, Scott argues that the railroad waived any error in connection with this issue by failing to request and tender a substantially correct explanatory instruction in accordance with Rule 279. We disagree.

■ As heretofore indicated, a simple way to cure the deficiency pointed out and objected to with reference to Special Issue No. 1 is to include the relevant acts and omissions within the wording of the issue, although the same correction may be accomplished by listing them in a complementary limiting instruction. The latter is not the type of "explanatory instruction" contemplated in Rule 279. This Court so held in an analogous situation in *City of Austin v. Powell*, 156 Tex. 610, 299 S.W.2d 273 (1957), wherein the trial court failed to fix the burden of proof either in the special issue or by instruction in the charge. Either method was permissible under Rule 277, but the defendant objected only to the issue without tendering an instruction. This Court held that the objection to the issue was sufficient; that there was no waiver because of failure to tender an instruction; and since the procedure was covered by Rule 277 "it was not intended that this matter should be comprehended by the general provision relating to 'explanatory instruction' contained in Rule 279."[6] We so hold with reference to the objection which was overruled in the present case.

---

4. See Pope and Lowerre, *Revised Rule 277—A Better Special Verdict System for Texas*, 27 S.W.L.J. 577 (1973).

5. See Sample Charge "A" in the 1973 Cumulative Supplement in the pocket part of Vol. I of *Texas Pattern Jury Charges*, pages 11–12.

6. With reference to *City of Austin v. Powell, supra*, Professor Hodges comments that the same result could have been reached by reasoning that "since . . . the error can be cured by a change in the wording of the issue, a defect in the issue, reachable by objection, rather than a failure to submit an explanatory instruction, was presented." Hodges, *Special Issue Submission in Texas*, p. 173..

*The "Act of God" Issue and Instruction*

■ As indicated, the railroad filed affirmative written pleadings that the accident was due solely to the washout of its tracks caused by an Act of God. There was much evidence that the unprecedented rainstorm and flash flood caused the washout and subsequent accident. The evidence is summarized in the opinion of the Court of Civil Appeals. The railroad insists that this was a controlling issue raised by the pleadings and the evidence. It made a timely request for the trial court to submit an issue inquiring whether the accident was due solely to an Act of God. This defensive concept has all of the aspects of an inferential rebuttal issue, and we so consider it.[7] Prior to our opinion in *Yarborough v. Berner*, 467 S.W.2d 188 (Tex.1971), and the 1973 amendment to Rule 277, the railroad would have been entitled to a separate finding on this type of rebuttal issue. *Yarborough v. Berner, supra; Fort Worth & D. C. Railway Company v. Kiel*, 143 Tex. 601, 187 S.W.2d 371 (1945); *Gulf, C. & S. F. Ry. Co. v. Boyce*, 39 Tex.Civ.App. 195, 87 S.W. 395 (1905, writ ref'd). The submission of inferential rebuttal issues has been discouraged since this Court's opinion in *Yarborough v. Berner, supra*, and they have been prohibited since the adoption of the 1973 amendment to Rule 277. The proscription reads: "Inferential rebuttal issues shall not be submitted." Rule 277. We agree with plaintiff Scott's argument that the Court of Civil Appeals erred in holding that the railroad's "Act of God" defense should have been submitted as a separate issue.

On the other hand, under the pleadings and evidence in this case, the railroad company was entitled to have this defensive aspect of the case fairly presented to the jury by an explanatory instruction. *Yarborough v. Berner, supra*; Rule 277. In our effort to provide a simpler special verdict practice it was anticipated that there would be more emphasis on adequate, though not excessive, explanatory instructions.[8] We retained the mandate in Rule 277 that the court "shall submit such explanatory issues as shall be proper to enable the jury to render a verdict." Accompanying the railroad's request for a special issue on this defense was its proposed definition of the meaning of the term "Act of God."[9] After refusing to submit the issue, the trial court placed defendant's requested definition immediately ahead of the special issues with this additional instruction:

> "An occurrence may be an 'Act of God', that is, an event not caused in whole or in part by the negligence of any party."

■ The railroad company timely objected to this instruction because of the trial court's "failure . . . to relate it either to the issues inquiring on negligence or the issues inquiring with regard to causation . . . ." Its objection and arguments in the courts below and here are that this abstract statement of the law was meaningless to the jury since it was wholly without reference to or connection with any issue or definition on negligence or causation. It

---

7. Such issues are defined as denial issues, defenses that seek to rebut liability in terms of offering a non-negligent explanation for the occurrence of a sole non-human cause. Hodges, *Special Issue Submission in Texas*, § 15 et seq. Professor Hodges lists "unavoidable accident" and "sole proximate cause" as inferential rebuttal issues. Id. § 19 at p. 50. Both have aspects of the defensive concept of "Act of God." The concept includes the theory that physical, non-human circumstances, were the sole cause of the accident or occurrence, thus negating negligence as a causative factor.

8. Pope, *A New Start on the Special Verdict*, 37 Tex.B.J. 335, 337 (1974); Pope and Lowerre, *Revised Rule 277—A Better Special Verdict System for Texas*, 27 Sw.L.J. 577, 587 (1973).

9. "You are instructed that by the term 'Act of God' as used in this Charge is meant an accident that is due directly and exclusively to natural causes without human intervention and which no amount of foresight or care reasonably exercised could have prevented. The accident must be one occasioned by the violence of nature, and all human agency is to be excluded from creating or entering into the cause. The term implys [sic] the intervention of some cause not of human origin and not controlled by human power. If the derailment resulted in whole or in part from human negligence it was not an 'Act of God.'"

failed to instruct the jurors how to apply the law to the issues if they should determine that the washout and Scott's injuries were caused solely by an Act of God. The above quoted instruction was defective for another reason which was not set forth in the objections. It actually describes "unavoidable accident" rather than "Act of God." Furthermore, it is not consistent with the definition which preceded it.

Upon retrial, if the pleadings and evidence again raise "Act of God" as a defense, the explanatory instruction should focus the effect of the concept on the relevant issues that are to be considered, but without reference to the result thereof. This may be accomplished by inserting the following explanatory instruction in the charge after the definitions of "negligence" and "cause in whole or in part":

In connection with the above definitions and any special issue using either term, you are instructed that an occurrence is not caused in whole or in part by the negligence of any party if it is due solely to an "Act of God." [10]

The judgment of the Court of Civil Appeals is affirmed.

McGEE, Justice, dissenting.

I respectfully dissent.

The Railroad affirmatively pled that the accident was due solely to the washout of its tracks caused by an Act of God and produced substantial evidence that the unprecedented rainstorm caused the washout and subsequent accident. The Railroad insisted that this was a controlling issue and requested the trial court to submit an issue inquiring whether the accident was due solely to an Act of God. I am in agreement with the holding of the majority opinion that the court of civil appeals erred in holding that the Railroad was entitled to a separate issue on the Act of God defense; clearly such an issue would have been an inferential rebuttal issue proscribed by Rule 277.

I disagree, however, with that portion of the opinion that would require the trial court to submit both a definition of an Act of God and an additional instruction on it. The trial court correctly submitted the following definition and instruction:

"You are instructed that by the term 'Act of God' as used in this Charge is meant an accident that is due directly and exclusively to natural causes without human intervention and which no amount of foresight or care reasonably exercised could have prevented. The accident must be one occasioned by the violence of nature, and all human agency is to be excluded from creating or entering into the cause. The term implys [sic] the intervention of some cause not of human origin and not controlled by human power. If the derailment resulted in whole or in part from human negligence it was not an 'Act of God'.

"An occurrence may be an 'Act of God', that is, an event not caused in whole or in part by the negligence of any party."

The majority opinion, as I understand it, would also require that the following instruction be given in the charge after the definitions of "negligence" and "cause in whole or in part":

"In connection with the above definitions and any special issue using either term, you are instructed that an occurrence is not caused in whole or in part by the negligence of any party if it is due solely to an 'Act of God'."

In my opinion, this additional instruction is an unwarranted comment on the weight of the evidence and, therefore, is improper.

Further, I strongly disagree with the majority's holding regarding the manner in which Special Issue No. 1 was submitted. The broad form of submission used in this case is a permissible means of submitting controlling issues to the jury, Tex.R.Civ.P. 277; *see Mobil Chemical Co. v. Bell*, 517 S.W.2d 245 (Tex.1974); *Members Mutual*

---

10. This should be followed by the definition of "Act of God," submitted by the railroad and quoted in the preceding footnote 9.

*Insurance Co. v. Muckelroy*, 523 S.W.2d 77 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n. r. e.), and I do not think additional instructions are necessary. The majority's opinion, I fear, will lead to the excessive use of explanatory instructions, thus defeating the intent of Rule 277 to have a simpler special verdict system.

I would reverse the judgment of the court of civil appeals and affirm that of the trial court.

## ON MOTION FOR REHEARING

■ The plaintiff, Allen J. Scott, contends that since this suit was brought under the Federal Employers' Liability Act, 45 U.S.C.A., § 51 et seq., his substantive rights are governed by federal law and cannot be interfered with, lessened or destroyed by a State rule of practice or procedure. *Arnold v. Panhandle & Santa Fe Ry. Co.*, 353 U.S. 360, 77 S.Ct. 840, 1 L.Ed.2d 889 (1957); *Rogers v. Missouri Pacific R.R. Co.*, 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957); *Brown v. Western Railway of Alabama*, 338 U.S. 294, 70 S.Ct. 105, 94 L.Ed. 100 (1949); *Texas & Pac. Ry. Co. v. Younger*, 262 S.W. 557 (Tex.Civ.App.1953, writ ref'd n. r. e.); 79 A.L.R.2d 553, 559. We agree with this basic premise. We do not agree, however, that any of the plaintiff's substantive rights have been denied by this remand for a new trial in accordance with the Texas Rules of Civil Procedure.

■ Our decision does not relate to burden of proof, the sufficiency of evidence, the right to a jury determination, or any of the other "substantive" rights which have been held to be governed by federal law in F.E.L.A. cases. On the contrary, it deals solely with rules of procedure relating to the form, necessity, and effect of jury issues and instructions. These have been recognized to be procedural rather than substantive when they do not interfere with a right or defense provided by the Act. *Chesapeake and Ohio Railway Company v. De Atley*, 241 U.S. 310, 36 S.Ct. 564, 60

L.Ed. 1016 (1916); *Missouri Pacific Railroad Company v. Cross*, 501 S.W.2d 868 (Tex. 1973); *Thompson v. Robbins*, 157 Tex. 463, 304 S.W.2d 111 (1957); *King v. Schumacher*, 32 Cal.App.2d 172, 89 P.2d 466 (1939), cert. den. 308 U.S. 593, 60 S.Ct. 123, 84 L.Ed. 496; *Atlantic Coast Line R. Co. v. Strickland*, 87 Ga.App. 596, 74 S.E.2d 897 (1953); *Renn v. Seaboard Air Line Ry.*, 170 N.C. 128, 86 S.E. 964 (1915), aff'd 241 U.S. 290, 36 S.Ct. 567, 60 L.Ed. 1006.

Our decision has put no end to Scott's alleged rights, and it does not defeat them. It merely requires the assertion and adjudication of those rights to be in accordance with the rules of procedure of the forum which he chose. His principal complaint is that the broad finding of negligence was sufficient to support a judgment under federal law in an F.E.L.A. case. See *Arnold v. Panhandle & Santa Fe Ry. Co., supra*, and other cases referred to therein. In *Arnold* a sharply divided Court held that a favorable answer on the broad issue of whether the railroad was negligent in failing to provide the plaintiff with a reasonably safe place in which to do his work was sufficient in spite of unfavorable answers to alleged conflicting specific issues. We would have followed that decision in this case if that broad issue had been requested and the jury had answered it in favor of the plaintiff.

The plaintiff alleged negligence of the railroad "in failing to provide plaintiff with a reasonably safe place in which to do his work,"[1] but he requested no jury finding on that issue. Scott's evidence of an unsafe place in which to ride or work related to a defective door latch on the locomotive in which he was riding. There was some evidence that the failure of the latch to hold the door shut resulted in plaintiff's being injured when he was thrown against the open door at the time of the derailment. Instead of requesting the broad form of issue as to unsafe place in which to work, the plaintiff requested a specific issue about the defective latch, and the jury answered

---

1. At the time of the accident plaintiff was riding in the cab of one of the engines on his way back to his residence in Silsbee, having completed his hours of work as a brakeman prior to the train's departure from Somerville.

it against him.[2] The plaintiff also alleged several other specific acts and omissions as negligence on the part of the defendant. A problem in this case arose by reason of the presence in the case of considerable evidence which went far beyond the plaintiff's allegations of the facts upon which he was relying. It was for this reason that we determined that a plaintiff may have a broad negligence issue, but by the wording of the issue or by complementary instructions the jury will be precluded from considering matters that go beyond what he alleged and what he thus put the defendant upon notice as his grounds for recovery. This is the procedure required by Texas Rules of Civil Procedure 277 and 279.

### Texas Rule 277

Plaintiff also contends that our decision is contrary to our own Rule 277 and our statement concerning the broad submission of negligence in *Mobil Chemical Co. v. Bell*, 517 S.W.2d 245 (Tex.1974). We disagree. On the contrary, we recognized that Rule 277 gives the trial court discretion "to submit separate questions with respect to each element of a case or to submit issues broadly."

■ While the writer considers the checklist system authorized by Rule 277 to be preferable in ordinary negligence cases involving multiple acts and omissions,[3] the court said in *Mobil*, and we reaffirm, that:

> The rule (Rule 277) means that in an ordinary negligence case, where several specific acts of negligence are alleged and evidence as to each is introduced, the submission of a broad issue inquiring generally whether the defendant was negligent is not error and is not subject to the objection that the single issue inquires about several elements or issues. 517 S.W.2d at 255.

**2.** Special Issue No. 3, requested by plaintiff, read:

"Do you find from a preponderance of the evidence that the door latch on the locomotive in question was not in proper and safe condition on the occasion in question?" To this the answer was "We do not."

■ If there is a variance between the pleadings and the proof, we have now held further that, upon proper request, the trial court should limit a broad issue to those acts or omissions which are included within the pleadings and supported by some evidence. Rules 277 and 279. As clearly stated in our opinion, this does not require separate questions as to each of such acts or omissions. The limitation may be accomplished by including in a single issue all of the alleged negligent acts or omissions which are raised by the pleadings and evidence, as: "Was the defendant negligent in _____ or _____ or _____?" We have further set forth an alternative method of complying with this requirement by submitting a broad negligence inquiry and following it with a complementary instruction which would limit the jury to consideration of the specified acts or omissions raised by the pleadings and the evidence. Or, as heretofore indicated, the checklist form may be used as another means of broad submission.

The motion for rehearing is overruled.

**3.** See paragraph 4 of Rule 277 and Sample Charge "A" in the 1973 Cumulative Supplement of Vol. I of *Texas Pattern Jury Charges*, pages 11–12.